Parker *vs.* King.

---

ROBERT PARKER, plaintiff in error, *vs.* RUFUS KING, defendant in error.

Where a bill was filed to enjoin a judgment at law, and praying for a new trial, and it appeared by the answer that an affidavit of illegality had been previously adjudicated, upon which the questions involved in this bill were involved, or might have been embraced therein:

Parker *vs.* King.

*Held,* There was no error in the Court refusing the injunction.

*Held again,* That the verdict of the jury, that the defendant in execution was in possession of the land levied on at the commencement of the suit, and that the notes, the foundation of the suit, were given for the land, rendered on the trial of the affidavit of illegality, was an adjudication of the rights and equities of the parties, under the Relief Act of 1868.

Homestead. Relief. Estoppel. Before Judge CLARK. Webster county. Chambers. June, 1871.

Parker's bill against King made these averments: On the 5th of January, 1860, he bought of King four hundred and five acres of land, in said county, whereon Parker is living, paid him therefor $600 00, cash, and gave his two notes for $1,020 00 and $1,620 00, respectively, due twelve months thereafter. A few months thereafter, he also bought of King corn, etc., at $305 00, and gave therefor his three notes. When the notes for the land were due, he paid thereon $1,600 00. By clearing, and other specified improvements and repairs of said land, which cost him, say $675 00, he has so improved said place that it is worth, at least, double what it was when he bought it. In 1863 King obtained judgment against him on said notes, and Parker offered to pay him the amount of the judgment, but King would not accept the tender, (what it was and when made does not appear.)

In 1863, and 1864, and 1867, he made payments on the judgment, and directed that they should be applied to payment of the land debt first, but $255 00 of these payments were wrongfully applied to pay the debt for the personal property. King agreed to receive, in part payment for said land, a note held by Parker on one Crynes for $109 93, and directed Parker to sue it to judgment in his, Parker's, name, for King's use, which he did.

When Georgia seceded from the Union, King was a citizen of Georgia, and so remained during the war, and gave money, provisions and clothing by way of aiding the armies

of the Confederate States, and sympathized with them. By the result of this war, besides not being able to make cotton during its continuance, Parker lost slaves worth $16,000 00, and a large amount by depreciation of the value of his choses in action.

In December, 1868, the *fi. fa.* founded on said judgment was levied on said land, Parker made affidavit that he wished to scale said judgment, under the Relief Act of 1868, and the sheriff returned the papers to Court. When this matter came on for trial, in March, 1870, Parker was unrepresented and at home, too sick to attend Court. Had he been present, he could have proved that said personalty was part of the consideration of said judgment; that King aided " the rebellion;" that Parker tendered payment of the debt, and had paid $400 00 or $500 00 thereon, which had not been credited thereon, and the loss which he had sustained by said war. The case was tried and the affidavit was dismissed, as Parker heard after Court adjourned. He had no notice that King had filed his affidavit as to paying taxes, under the Relief Act of 13th of October, 1870. Two creditors of King, claiming $500 00 or $600 00, have garnisheed Parker, and if he pays King he may have to pay these creditors again.

In 1869 he applied to have said land exempted from the payment of his debts, as his homestead. King appeared and objected to the order for exemption being granted, because said purchase-money was not paid, and the Ordinary, passing on the whole matter, granted the homestead. King did not appeal, and is, therefore, estopped from selling said land. And yet the sheriff, at King's instance, is about to sell said land, under said judgment. He prayed for injunction against such sale, that he have a new trial, " and adjust the matters and equities set up in this bill," " according to the Relief Act of 1868," and for general relief.

Upon receiving this bill, in May, 1871, the Chancellor ordered King to shew cause why the injunction should not be granted.

Parker *vs.* King.

When the time for hearing came, Parker's counsel read affidavits from his son and an inmate of his house. The son said Parker, during said March Term, 1871, " was quite sick," from Tuesday till Saturday, hardly able to leave his room, and decidedly too unwell to attend Court." The other person said he was " very sick during most of the week " and from Tuesday till Saturday unable to go to Court or " attend to the duties about the house." They also put in evidence the papers showing the setting apart of said land as his homestead. In reply King introduced the other papers alluded to in said bill. From these it appeared that on the 21st of December, 1868, King's agent made affidavit that said judgment was for the purchase-money of said land, and thereupon, on the next day the sheriff levied on said land. This is the levy stopped by Parker's relief affidavit as aforesaid. On the *fi. fa.* on the $1,020 00 note the payments were $900 00, 5th December, 1863; $600 00, 25th January, 1864, and $72,00, balance, 7th January, 1867. The entry of payment on the other *fi. fa.* was $625 24, paid January 7th, 1867. The verdict of the jury on said trial was, that Parker was in possession of the land when the suit was begun, and that the judgment was for the purchase-money of the land, and thereupon the illegality was dismissed and the *fi. fa.* was ordered to proceed.

As to Parker's sickness, etc., a juryman made affidavit that Parker was, on said trial, represented by counsel, and the same who had represented him from the filing of said relief affidavit, and that, on the day of the trial and the day before, Parker was ploughing in his farm about eight o'clock, A. M.; and several other persons made affidavits of the same purport. He showed that the garnishment was dissolved. Besides these facts, King demurred to the bill for want of equity. The Chancellor refused the injunction, and that is assigned as error.

HAWKINS & BURKE, for plaintiff in error.

HAWKINS & GUERRY, for defendant.

LOCHRANE, Chief Justice.

This case comes before the Court upon the refusal of the Court below to grant an injunction. It appears from the record that Robert Parker, on the 5th January, 1860, purchased of Rufus King lands in Webster county, paying him a part of the purchase-money, and giving his two notes for the balance of the purchase-money, one for $1,020 00 and the other for $1,620 00, and subsequently purchased from him some personal property amounting to some $300 00. He alleges in his bill that moneys paid on this indebtedness were intended to be credited on the land notes instead of the personal property. Suit was instituted upon the land notes for the balance due, and went into judgment, and were levied upon his property, to which he filed his affidavit of illegality, under the Relief Act of 1868, which was dismissed at the March Term, 1871, while, as he alleges in his bill, he was sick and unable to attend the Court, and while he was unrepresented in said Court. He also sets up what he would have proven if he were in the Court, as to his losses. He also alleges that he had a homestead set apart for the benefit of his wife and minor child, covering the property now levied on, and asked for a new trial and injunction against the sale. A temporary order for injunction was granted by the Court, and at the hearing he proved by two witnesses, inmates of his house, he was quite sick during the most of the Court week at Preston. The defendant showed for cause against granting the injunction, that the notes were given for the land, the *fi. fa.* sought to be enjoined and entries thereon, and the illegality taken thereto on the part of Parker, and the verdict of the jury that Parker was in possession of the land at the commencement of the suit, and also that he was represented in Court by an attorney on the trial of the case, and by affidavits that he was not sick, but attending to his ordinary business. Upon the hearing of which the Court

rescinded the temporary injunction granted, and refused the injunction prayed for.

We do not think, under the facts in this case, that the Court below erred in refusing to grant an injunction. The parties to this suit, after the filing of the illegality, were bound to have prosecuted their rights, and it is too late, after an adjudication of the questions involved therein, or which might have been embraced therein, to be heard upon grounds as unsubstantial as those presented by this bill. Here was a suit instituted for the recovery of a large amount of money, given for the purchase of lands, and which, from this record, a jury had passed upon, and judgment entered up, in form of law, in relation to which there is no action until 1868, when an affidavit of illegality was filed, under the Relief Acts of 1868, and remained in Court from December, 1868, until March, 1871, before it came on for trial, and in relation to which, involving the most important right, he says he was unrepresented, and, by the testimony of several witnesses in this case, was able to attend to his own business, yet makes no appearance in Court, and sends no representation of his condition. It would be trifling with justice to permit parties to thus neglect the processes of the Court, and, by excuses afterwards, ask equity to interfere to protect them against their own unreasonable negligence.

But it appears, in this case, in another aspect of it, that Parker was represented by counsel, whose name was marked upon the dockets of the Court, and with whom he could have communicated; for the record discloses several of the jury, at that term, passed and repassed by his house and saw him there. There is nothing set up by this bill which the complainant says he would have sworn, that would not have been properly passed on, on the affidavit of illegality, under the rule in 40th Georgia, 493. And in the same authority, (page 67,) the judgment of the Court dismissing the illegality was an adjudication of everything which might have been set up therein, especially as this dismissal of the Judge was

predicated upon the verdict of the jury, to the effect, "the defendant, Robert Parker, was in possession of the land levied on at the time of the commencement of the suit, and the notes, the foundation of the suit, were given for the land." And, as to the question of equity, arising under the homestead, this Court, in 39th Georgia, 380, settled the legal proposition that the judgment of the Court of Ordinary, setting apart land levied upon for the homestead, did not affect the right of the plaintiff to have it sold for payment of the purchase-money.

Judgment affirmed.